## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **TERRY S.,**[1] <br><br>          **Plaintiff,** <br><br>    **vs.** <br><br> **KILOLO KIJAKAZI** <br> **Acting Commissioner of Social Security,** <br><br>           **Defendant.** | **Court No. 2:21-cv-00379-HCN-DBP** <br><br><br> **REPORT & RECOMMENDATION**[2] <br><br><br> **Judge Howard C. Nielson, Jr.** <br> **Magistrate Judge Dustin B. Pead** |

    Plaintiff, pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the

Acting Commissioner of Social Security (Commissioner) denying his claim for disability

insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the

Social Security Act (Act).[3] After careful review of the entire record, the parties' briefs and

supplemental briefs,[4] and arguments presented at a hearing held on July 28, 2022,[5] the Court

concludes that the Commissioner's decision is supported by substantial evidence and legally

sound, and therefore recommends that the Commissioner's final decision be AFFIRMED.[6]

---

[1] Based on privacy concerns regarding sensitive personal information, the court does not use Plaintiff's last name. Privacy concerns are inherent in many of the Federal Rules. *See* Fed. R. App. P. 25(a)(5); Fed. R. Civ. P. 5.2; Fed. R. Crim. 49.1.

[2] This case is assigned to Magistrate Judge Dustin B. Pead under a 28 U.S.C. § 636(b)(1)(B) referral. ECF No. 12.

[3] ECF No. 31, Plaintiff's Amended Motion for Review of Agency Action.

[4] ECF No. 32, Defendant's Memorandum in Opposition; ECF No. 33 Plaintiff's Reply Brief.

[5] ECF No. 34, Notice of Hearing on Plaintiff's Motion for Review of Agency Action; ECF No. 35, Minute Entry for Oral Argument.

[6] ECF No. 31.

## I.   LEGAL FRAMEWORK

### A.   Statutory and Regulatory Background[7]

To establish that he is disabled, a claimant must show that he was unable to engage in any substantial gainful activity due to some medically determinable physical or mental impairment or combination of impairments that lasted, or were expected to last, for a continuous period of at least 12 months.[8] A disabling physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."[9] The claimant has the burden of furnishing medical and other evidence establishing the existence of a disabling impairment.[10] Whether a claimant is disabled under the Act is a decision reserved to the Commissioner alone.[11]

### B.   Standard of Review

The Court's review of the Commissioner's final decision is specific and narrow. The Court reviews the Commissioner's decision to determine whether substantial evidence in the record, taken as a whole, supports the factual findings and whether the correct legal standards

---

[7] Citations to DIB regulations (20 C.F.R. § 404) have parallel citations to SSI regulations (20 C.F.R. § 416), which are not cited herein.

[8] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[9] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[10] 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(i).

[11] 20 C.F.R. §§ 404.1520b(c)(3), 404.1546(c).

were applied.[12] On judicial review, the agency's factual findings are "conclusive if supported by substantial evidence."[13] The threshold for substantial evidence is "not high"; it is "more than a mere scintilla" of evidence, and "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14] The Court may neither "reweigh the evidence [n]or substitute [its] judgment for the [ALJ's]."[15] Where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed.[16]

## II.   FACTUAL BACKGROUND

In August 2018, Plaintiff protectively applied for DIB and SSI, alleging disability beginning March 20, 2018, due to symptoms related to heart-related problems, asthma, depression, anxiety, bipolar disorder, and insomnia.[17] He was 43 years old on the date of the ALJ's decision.[18] He completed high school and worked, in the relevant past, as a forklift operator.[19]

---

[12] *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).

[13] *Biestek v. Berryhill,* 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g) (internal quotation marks omitted)).

[14] *Id.* at 1154 (internal quotation marks omitted).

[15] *Hendron*, 767 F.3d at 954 (citation omitted).

[16] *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

[17] Tr. 42, Tr. 246, Tr. 250.

[18] Tr. 45, Tr. 51, Tr. 243, Tr. 246.

[19] Tr. 77-78, Tr. 251, Tr. 221-45.

Plaintiff pursued his disability claim to an August 2020 hearing with an ALJ.[20] In an

October 2020 decision, the ALJ determined that Plaintiff was not disabled within the meaning of

the Social Security Act (the Act).[21] In making that determination, the ALJ applied the five-step

sequential evaluation for determining disability in adults.[22] The ALJ found that Plaintiff's severe

impairments would limit him to a range of simple, routine, light work.[23] Specifically, the ALJ

concluded that Plaintiff could:

> lift and carry up to 20 pounds occasionally and 10 pounds
> frequently; can stand or walk up to four hours total and can sit
> for up to six hours total in an eight-hour workday; can lift and
> carry up to 20 pounds occasionally and 10 pounds frequently;
> can stand or walk up to four hours total and can sit for up to six
> hours total in an eight-hours workday; cannot tolerate any
> exposure to hazards, such as moving machinery or working at
> unprotected heights; cannot tolerate concentrated exposure to
> fumes, odors, dusts, gases, or poor ventilation; can understand,
> remember, and carry out simple instructions and make simple
> work-related decisions; and can perform routine tasks at a
> consistent pace, but not a production rate pace where each task
> must be completed within a strict time deadline.[24]

At step four, the ALJ found that a person with those limitations could not perform

Plaintiff's past relevant work,[25] but that Plaintiff was not disabled because he could perform

other jobs existing in significant numbers the national economy including the occupations of

---

[20] Tr. 60-82.

[21] Tr. 42-53.

[22] 20 C.F.R. § 404.1520.

[23] Tr. 47.

[24] *Id.*

[25] Tr. 51.

electrode cleaner, information clerk and copy machine operator.[26] The agency's Appeals Council

denied Plaintiff's request for review,[27] making the ALJ's decision final for purposes of judicial

review.[28] This Court has jurisdiction over Plaintiff's appeal of that final decision under 42 U.S.C.

§ 405(g). On April 11, 2022, Plaintiff filed his pending Amended Motion for Review of Agency

Action.[29]

### III.  ANALYSIS

**A.      Appeals Council Evidence**

Plaintiff first argues that the agency's Appeals Council did not properly consider

evidence submitted to it after the ALJ issued the October 2020 decision. The Court concludes,

however, that the Appeals Council properly considered that evidence. Further, the Court finds

that the new evidence would not undermine the ALJ's findings or change the ALJ's ultimate

conclusion that Plaintiff was not disabled.

After the ALJ issued his October 2020 decision, Plaintiff submitted additional evidence

to the Appeals Council.[30] That evidence included October 28, 2020, treatment notes from Daniel

Cox, D.O.,[31] and a November 9, 2020, treatment note from Michael Evans, PA-C.[32] After

---

[26] Tr. 52-53.

[27] Tr. 1-5.

[28] 20 C.F.R. § 404.981.

[29] ECF No. 31.

[30] Tr. 2, Tr. 8-33, Tr. 2654-59.

[31] Tr. 8-33.

[32] Tr. 2655-59.

receiving and reviewing the evidence, the Appeals Council denied Plaintiff's request for review.[33]

Submitting additional evidence to the Appeals Council does not automatically invalidate an ALJ's decision. Instead, upon receipt of additional evidence after the ALJ issues a decision, the Appeals Council considers whether to take up review of a case.[34] The Appeals Council will only grant a request for review if the evidence received meets *each* of five criteria:

1. the evidence is new (evidence not already in the administrative record before the ALJ);

2. the evidence relates to the period on or before the date of the ALJ's decision;

3. the evidence is "material" (it relates to issues dispositive of disability in the case);

4. the evidence shows "a reasonable probability that the additional evidence would change the outcome of the decision"; and

5. the claimant had good cause for not informing the agency about or submitting the evidence at least five days prior to the administrative hearing.[35]

Here, the Appeals Council considered the evidence from two of Plaintiff's treatment providers, but "f[ound] this evidence does not show a reasonable probability that it would change the outcome of the [ALJ's] decision."[36]

---

[33] Tr. 1-5.

[34] 20 C.F.R. § 404.967 (in considering a claimant's request for review, "[t]he Appeals Council may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to an administrative law judge").

[35] 20 C.F.R. § 970(a)(5), (b).

[36] Tr. 2.

When a claimant submits evidence to the Appeals Council, the Appeals Council is under no obligation to articulate its reason for finding that the new evidence does not show a reasonable probability it would change the outcome of the ALJ's decision.[37]

Instead, the new evidence becomes part of the administrative record before the Court, and the Court considers whether the evidence submitted to the Appeals Council undermines the substantial evidence supporting the ALJ's findings.[38] If the evidence does not undermine the ALJ's reasonable and substantially supported findings, the Court will affirm the ALJ's decision.[39] Here, after conducting such a review, the Court finds that the new evidence does not undermine the ALJ's decision; hence, the Court declines to remand for further consideration of the new evidence for the reasons discussed below.

---

[37] *Vallejo v. Berryhill*, 849 F.3d 951, 955–56 (10th Cir. 2017) ("*Vallejo I*") (rejecting the argument that the Appeals Council is required to explicitly discuss evidence submitted to it—including a treating physician's opinion—when it denies review); *Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir. 2006) (finding "nothing in the statutes or regulations that would require" the Appeals Council to "specifically discuss the effect of [a doctor's] treatment records on the . . . ALJ's decision, in light of the record as a whole," and "agree[ing] with the Appeals Council that [the doctor's] treatment records do not undercut the ALJ's finding[s]").

[38] *Vallejo I*, 849 F.3d at 956 (noting that when evidence is submitted only to the Appeals Council, which denies review, "[t]he district court's only option was to conduct a substantial-evidence review by assessing the entire agency record, including [the treating physician's] never-before assessed opinion.").

[39] *Vallejo v. Comm'r, SSA*, 762 F. App'x 532, 536 (10th Cir. 2019) (unpublished) (*Vallejo II*) (revisiting *Vallejo I* on a second appeal after the district court again refused to consider the new evidence alongside the other record evidence, and finding that the ALJ's decision was supported by substantial evidence even in light of a later-submitted treating physician's because that opinion was unsupported and inconsistent with other substantial evidence).

Turning first to Dr. Cox's October 2020 treatment note, that note included normal and mild cardiovascular examination findings.[40] Among other recommendations, Dr. Cox recommended "light intensity activity at this time, no heavy or high intensity weight lifting or activity"[41] Dr. Cox's examination findings and recommendations do not undermine the ALJ's findings. Dr. Cox did not assess any new medical conditions or note any never-before-reported complaints not already considered by the ALJ in his October 2020 decision.[42] And, congruent with Dr. Cox's limitation to "light intensity activity," with "no heavy or high intensity weight lifting or activity," the ALJ limited Plaintiff to the "only minimally strenuous" activities of light work under the regulations, with the additional exertional limitations of standing or walking only four hours in an eight-hour workday.[43]

In Dr. Cox's October 2020 treatment note, Plaintiff also reported that he "leads a sedentary lifestyle and is unable to work," and Dr. Cox noted that Plaintiff "is unable to hold a job d/t [due to] his multiple comorbidities and complications from his aortic dissection"[44] Such statements—that a claimant is or is not disabled, able to work, or able to perform regular and

---

[40] Tr. 17.

[41] Tr. 31.

[42] Tr. 8-33.

[43] Tr. 47; *see also Kirkpatrick v. Colvin*, 663 F. App'x 646, 649 (10th Cir. 2016) (unpublished) (finding light work involves "only minimally strenuous activities"); 20 C.F.R. § 404.1567(b) (defining the requirements of light work, which usually requires up to six hours of standing or walking in an eight-hour workday).

[44] Tr. 9-10.

continuing work—do not undermine the ALJ's findings because they fall into the category of "[e]vidence that is inherently neither valuable nor persuasive."[45]

Turning next to Mr. Evans's November 2020 treatment note, Mr. Evans noted that Plaintiff's recent lab work revealed low iron levels.[46] Plaintiff told Mr. Evans that "a couple years ago he had iron infusion which was very helpful," and Mr. Evans arranged for the transfusion.[47] Mr. Evans's concurrent objective examination findings were unremarkable, including a musculoskeletal examination finding that Plaintiff "[m]ove[d] extremities well"; a neurological examination finding that Plaintiff was fully alert and oriented; and a psychological examination finding that Plaintiff's judgment, orientation, affect, mood, and memory were all normal.[48]As with Dr. Cox's October 2020 treatment note, Mr. Evans's November 2020 treatment note did not assess any new medical conditions or note any never-before-reported complaints not already considered by the ALJ in his October 2020 decision.[49] Given Mr. Evans's unremarkable examination findings, Plaintiff's statement that the iron infusion treatment Mr. Evans was about to order had been "very helpful" in the past, and no submission of subsequent evidence indicating that the iron infusion turned out to be unhelpful, Mr. Evans's treatment note also does not undermine the ALJ's findings.

---

[45] 20 C.F.R. § 404.1520b(c)(3)-(4).

[46] Tr. 2655.

[47] Tr. 2656; Tr. 2658-59.
[48] Tr. 2657-58.

[49] Tr. 2655-59.

**B.      Listing 3.02: Chronic Respiratory Disorders**

Plaintiff next argues that the ALJ erred in finding that Plaintiff did not meet or medically

equal listing 3.02, the listed impairment for chronic respiratory disorders. The listed impairments

("listings") are found in the regulations' appendix.[50] Each listing describes objective medical

criteria that must be met for the requisite duration—12 continuous months—to allow the ALJ to

skip the inquiry in to whether the claimant can perform past relevant (step four) or other work

(step five) altogether, and instead find a claimant presumptively disabled at step three.[51] "For a

claimant to show that his impairment matches a listing, it must meet ***all*** of the specified medical

criteria. An impairment that manifests only some of those criteria, no matter how severe, does

not qualify."[52]

As the ALJ found, Listing 3.02—the listing for chronic respiratory disorders—has "very

specific FEV1 level[], FVC level[], DLCO measurement[], or arterial PaO2 measurement[]"

requirements.[53] Under the regulations, those requirements must be documented through "medical

evidence," including "pulmonary function tests."[54] Listing 3.02 includes both narrative and

---

[50] *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.00 *et seq*.

[51] 20 C.F.R. § 404.1525 (the listings "describe[] for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience").

[52] *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original); *see also Bernal v. Bowen*, 851 F.2d 297, 300 (10th Cir. 1988) (to show he met a listing, a claimant must provide medical findings that are at least equal in severity and duration to those described in the Listings).

[53] Tr. 46.

[54] *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 3.00C-H. "[S]pirometry measures how well you move air into and out of your lungs . . . ." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 3.00E(1). "A DLCO test measures the gas exchange across cell membranes in your lungs." *Id*. § 3.00F(1). An ABG test measures $P_aO_2$,

tabular criteria that must be precisely satisfied. If it is not, the ALJ will not find that the claimant

met Listing 3.02. "To show that an impairment or combination of impairments meets the

requirements for a listing, a claimant must provide specific medical findings that support each of

the various requisite criteria for the impairment."[55] Here, the objective medical evidence of

record fails to match the criteria needed to meet Listing 3.02.[56]

As for Plaintiff's argument that he might have satisfied Listing 3.02 through medical

equivalence, the Court finds that the ALJ's statement—that he considered the issue but found

that Plaintiff did not satisfy a listing through medical equivalence—was sufficient. Medical

equivalence must be shown through medical findings that are of at least equal severity to those

needed to meet a listing.[57] Here, no medical source has opined or otherwise concluded that

Plaintiff satisfied a listing through medical equivalence. And under SSR 17-2p, if an ALJ

"believes that the evidence does not reasonably support a finding that the individual's

impairment(s) medically equals a listed impairment," the ALJ "is not required to articulate

specific evidence supporting his or her finding that the individual's impairment(s) does not

medically equal a listed impairment."[58] Instead, the ALJ's statement that the claimant's

---

P$_2$CO$_2$, and the concentration of hydrogen ions in your arterial blood." *Id*. at § 3.00G(1). "Pulse oximetry measures S$_p$O$_2$, the percentage of oxygen saturation of blood hemoglobin." *Id*. at 3.00H(1).

[55] *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007) (citing 20 C.F.R. § 404.1525).

[56] *Duncan v. Colvin*, 608 F. App'x 566, 576 (10th Cir. Apr. 2, 2015) (unpublished) ("Because [the claimant] has not satisfied all of the Listing's criteria, she cannot prevail at step three as a matter of law."). Here, Plaintiff admits he does not satisfy the specific listing criteria, arguing he was "*on the cusp of listing-level severity*". ECF No. 31 at 9 (emphasis added).

[57] 20 C.F.R. § 404.1526(b).

[58] 2017 WL 3928306, at *4.

impairments do not medically equal a listed impairment generally "constitutes sufficient

articulation for this finding."[59] The ALJ made that finding here, and the Court will not displace

the ALJ's finding even if an alternative interpretation of the evidence would lead to a different

conclusion.[60]

## C.    Anemia as a Severe Impairment at Step Two

Plaintiff next argues that the ALJ erred by finding that Plaintiff's anemia was non-severe

at step two of the sequential evaluation because his anemia could exacerbate his breathing

problems. Here, the ALJ found that Plaintiff's asthma was a severe impairment, and found that

although Plaintiff's anemia was a medically determinable impairment it was not severe because

there was no record evidence suggesting that it caused more than minimal limitations in the

ability to perform work-related activities.[61]

Although there is conflicting evidence in the record about the effects of Plaintiff's

anemia, the evidence supporting the ALJ's view that Plaintiff's anemia was not a severe

impairment meets the substantial evidence threshold.[62] In any event, the ALJ considered whether

Plaintiff's respiratory impairment "or combination of impairments" met or medically equaled a

listing and considered Plaintiff's asthma symptoms in the narrative RFC discussion, including

---

[59] *Id.*

[60] *Lax*, 489 F.3d at 1084 (on substantial evidence review, the court does not re-weigh the evidence or substitute its judgment for that of the Commissioner).

[61] Tr. 45.

[62] *Biestek,* 139 S. Ct. at 1153, 1157 (the threshold for substantial evidence is "not high," and where substantial evidence supports the ALJ's findings, the Court defers to the ALJ's findings).

his doctor's statement that an albuterol inhaler gave Plaintiff "significant improvement" of his

shortness of breath, wheezing, chest tightness, and coughing and Plaintiff's own statement to his

doctor that his asthma is "well controlled" with daily use of Dulera, a preventative asthma

medication.[63] Moreover, the ALJ assessed an RFC that limited Plaintiff to the "only minimally

strenuous" activities of light exertion work, but only if such work did not involve concentrated

exposure to fumes, odors, dusts, gases, or poor ventilation.[64]

The evidence Plaintiff submitted to the Appeals Council further supports the ALJ's

finding. As explained above, as part of his October 2020 lung examination, Dr. Cox found that

Plaintiff had "[g]ood air entry bilaterally" without rhonchi or wheezing.[65] And despite recent

laboratory bloodwork showing that Plaintiff's iron levels were low, Mr. Evans's respiratory

examination findings indicate that Plaintiff "[s]peaks complete sentences without distress" and

had "[n]ormal work of breathing".[66] Moreover, Mr. Evans arranged for Plaintiff to receive an

iron infusion to address Plaintiff's low iron, which Plaintiff reported "was very helpful" when he

received it a couple of years earlier.[67]

Against this evidentiary backdrop, the Court finds that the ALJ did not err in assessing

Plaintiff's anemia impairment.[68] Even if the Court would have preferred that the ALJ had

---

[63] Tr. 46; Tr. 48-49 (citing Tr. 332-33, 2529).

[64] Tr. 47; *see also Kirkpatrick*, 663 F. App'x at 649 (finding light work involves "only minimally strenuous activities").

[65] Tr. 17.

[66] Tr. 2655; Tr. 2658.

[67] Tr. 2656; Tr. 2659-59.

[68] *Biestek*, 139 S. Ct. at 1154 ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual

addressed anemia as a severe impairment, on balance the ALJ's RFC assessment meaningfully

addresses any limitations that could be caused by Plaintiff's anemia, whether alone or in

combination with another impairment.[69]

### D.      The ALJ's Step Five Finding

Finally, Plaintiff argues that the ALJ erred at step five of the sequential evaluation by not

resolving an apparent conflict between, on the one hand, the vocational expert's testimony about

occupations performable within the mental limitations found in the ALJ's hypothetical question

and, on the other hand, those occupations' "Reasoning level" requirements in the *Dictionary of*

*Occupational Titles* (*DOT*). For the reasons explained below, the Court finds harmless any

apparent error in not resolving a conflict in the vocational expert's testimony.

In determining whether a claimant can perform other occupations in the national

economy, a vocational expert's testimony is substantial evidence on which an ALJ can rely.[70]

However, if there is an "apparent unresolved conflict" between the vocational expert's testimony

and the *DOT*, the ALJ "must elicit a reasonable explanation for the conflict before relying on the

[vocational expert] evidence" to support that step-five determination.[71]

---

determinations." (internal citation omitted).

[69] *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("any error here became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence").

[70] 20 C.F.R. § 404.1566(e).

[71] SSR 00-4p, 2000 WL 1898704, at *2; *but see Thompson v. Colvin*, 551 F. App'x 944, 949 (10th Cir. 2014) (unpublished) (rejecting the plaintiff's argument that the vocational expert's testimony conflicted VE testified that the jobs he identified were consistent with a hypothetical person with [the plaintiff's] impairments and the *DOT*").

Reasoning is one of three sub-categories of general education development (GED) defined in the *DOT*.[72] GED is defined as

> those aspects of *education* (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college. However, it may be obtained from experience and self-study.

*Id*. As the Tenth Circuit has explained, "GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job . . . ."[73]

In both his hypothetical question to the vocational expert and his ultimate RFC finding, the ALJ limited Plaintiff to understanding, remembering, and carrying out simple instructions and making simple work-related decisions; and to performing routine tasks at a consistent pace, but not a production rate pace where each task must be completed within a strict time deadline.[74] At the hearing, the vocational expert identified occupations that a person of Plaintiff's age, education, and work experience with such limitations could perform: electrode cleaner (37,000 national jobs); information clerk (48,000 national jobs); and copy machine operator (49,000 national jobs).[75]

Here, there is an arguable apparent unresolved conflict between the ALJ's mental RFC limitations and the information clerk occupation, which involves a Reasoning level of 4; but the

---

[72] *See DOT*, App'x C, 1991 WL 688702.

[73] *Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) (unpublished).

[74] Tr. 47; Tr. 79.

[75] Tr. 78-79.

Court finds no apparent unresolved conflict with the electrode cleaner and copy machine

operator occupations, which involve Reasoning levels of 1 and 2, respectively.[76] In *Hackett v.*

*Barnhart*, the Tenth Circuit found that a limitation to "simple and routine work tasks" "seems

inconsistent" with GED Reasoning Level 3 occupations, and remanded the case for resolution of

the "apparent" conflict.[77] But the *Hackett* court suggested that "level-two reasoning appears

more consistent with [that] RFC."[78] Hence, under *Hackett* and several subsequent cases in the

Tenth Circuit and this district, Courts have declined to find that Reasoning level 2 occupations

are in apparent conflict with RFC limitations similar to those found in this case.[79]

The salient question is, therefore, whether the 86,000 remaining jobs in the electrode

cleaner and copy machine operator occupations constitute a significant number of jobs under a

harmless error analysis.[80] The Court concludes that they do.[81] Hence, the ALJ did not harmfully

---

[76] *DOT* # 729.687-014 (electrode cleaner), 1991 WL 679734; *DOT* # 237.367-018 (information clerk), 1991 WL 672187; *DOT* # 207.685-014 (copy machine operator), 1991 WL 671745.

[77] 395 F.3d 1168, 1176 (10th Cir. 2005).

[78] *Id.*

[79] *See, e.g., Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (unpublished) (holding that a limitation to simple, repetitive, and routine work is consistent with Reasoning Level 2); *Marilyn M. v. Berryhill*, No. 1:17-cv-00063-PMW, 2018 WL 4376306, at *3 (D. Utah Sept. 13, 2018) (unpublished) ("However, the Tenth Circuit has held that a reasoning level of two is consistent with an RFC limitation to simple and routine work tasks. Accordingly, the court concludes that there is no inconsistency between the VE's testimony and the DOT for the ALJ to resolve, and therefore Plaintiff's argument fails." (citing *Hackett*, 395 F.3d at 1176; *Stokes*, 274 F. App'x at 684)).

[80] *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (affirming the ALJ's decision, even assuming two of three jobs relied on by the ALJ were erroneous, where substantial evidence showed the claimant could do the third job, and the job existed in significant numbers in the national economy).

[81] *See, e.g., Farnsworth v. Colvin*, No. 2:15-cv-00427-DBP, 2016 WL 4287391, at *5 (D. Utah Aug. 15,

err in determining that Plaintiff could perform jobs existing in significant numbers in the national economy.

## IV.  CONCLUSION & RECOMMENDATION

For the reasons stated above, the Court concludes that the ALJ's decision is supported by substantial evidence and is free from harmful legal error, and therefore **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED** in this case that Plaintiff's Amended Motion for Agency Review be **DENIED**.[82]

The Clerk's Office is directed to mail a copy of this Report and Recommendation to Plaintiff who is hereby notified of his right to object. Within fourteen (14) days of receiving a copy, Plaintiff may file his written objections.[83] A failure to do so may constitute waiver of objections upon subsequent review.

Dated this 22nd day of August, 2022.

DUSTIN B. PEAD
Chief United States Magistrate Judge

---

2016) (unpublished) (finding that the remaining unskilled occupation identified by the vocational expert is consistent with [the] RFC assessed by the ALJ, and that occupation's 40,000 jobs are substantial evidence supporting the ALJ's step-five finding).

[82] ECF No. 31.

[83] *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).